UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **TAMMY BROOKS,** | ) | CASE NO. 1:19CV272 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | |
| | ) | |
| **FRANKLIN PLAZA NURSING HOME** | ) | OPINION AND ORDER |
| | ) | |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendant Franklin Boulevard Nursing Home, Inc.'s Motion for Summary Judgment. (ECF # 23). For the following reasons, the Court grants Defendant's Motion.

On February 5, 2019, Plaintiff Tammy Brooks ("Brooks") filed her Complaint with the Court against Defendants Franklin Plaza Nursing Home and DMD Management, Inc., alleging Age Discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") 29 U.S.C. § 623 (Count I); Retaliation in violation of the ADEA, 29 USC § 623(d); and Age Discrimination in violation of Ohio Revised Code Sections 4112.14 and 4112.02(L). In May of 2019, DMD was voluntarily dismissed from the suit leaving Franklin as the lone Defendant.

**Background Facts**

According to her Complaint, Brooks began working for Defendant Franklin in 1986.

Brooks was employed by Franklin for over thirty years until she was terminated by Franklin in 2018. At the time of her termination, Brooks was a sixty year old laundry aide earning $22.44 per hour. Brooks had received promotions during her employment with Franklin. In 1991, she was promoted to Laundry Supervisor and in 2014 she was promoted to Environmental Services Director. During her time at Franklin, Brooks received several commendations. In 2016, Brooks decided to take a voluntary demotion back to laundry due to the stress of the Director position. Around this time, Franklin hired a new Administrator, Wioleta Findley, who asked Brooks when she was going to retire.

Franklin put into place two policies that Brooks contends were discriminatory against older employees. The first policy was a wage freeze for those who were employed by Franklin for over thirty years. The second policy was a "use it or lose it" policy requiring employees use their personal and vacation days or lose them. Brooks alleges these policies discriminated against older employees.

Brooks alleges she wrote a letter to the corporate officers in 2017, complaining of age discrimination, including the two policies she believed discriminated against older employees. As a result of her letter, Brooks contends she received three write ups in three months. She was ultimately terminated for failing to wear gloves while handling soiled linens in a hallway. According to Brooks, the Franklin Employee Handbook forbids employees from wearing gloves in the hallways. Brooks' termination was thus in violation of Franklin's own policies and presents evidence of age discrimination and unlawful retaliation.

**Franklin's Motion**

Franklin moves for summary judgment on all Brooks' claims, alleging Brooks has no

direct evidence of Age Discrimination or Retaliation and cannot meet her burden to make a prima facie claim. According to Franklin, Brooks was replaced by a woman five years younger than her. Under binding Sixth Circuit authority, an age difference of six years or less does not meet the "substantially younger" element of a prima facie claim of Age Discrimination.

Moreover, Findley denies asking Brooks when she was going to retire, but even if she did, Brooks admits Findley only asked her about it once and does not allege Findley made any other age related comments.

In 2018, Brooks wrote an anonymous letter to three officers of Defendant DMD that she alleges complained of Age Discrimination but Franklin asserts that the letter never mentions Age Discrimination directly. Furthermore, because it was sent anonymously, Franklin contends the letter could not have formed the basis of Brooks' Retaliation claim as the officers would not have known whom to retaliate against. Moreover, the officers deny receiving the letter and none of them were involved in the decision to fire Brooks.

Franklin further contends it had a legitimate business reason for terminating Brooks' employment as Brooks does not deny she failed to wear gloves while handling soiled linens, which was a violation of Franklin's policies. Brooks further acknowledges she was written up several times for violations. It was Findley who ultimately made the decision to terminate Brooks' employment for failing to wear gloves while handling soiled linens, creating an unsanitary condition. The situation was more problematic because Brooks was observed handling the soiled linens without wearing gloves by a State Surveyor, which almost resulted in a write up for Franklin by the State of Ohio.

**Brooks' Opposition**

As an initial matter, Brooks concedes she cannot meet her burden to make a prima facie case of Retaliation and has abandoned this claim.

According to Brooks, she was a stellar employee with no write ups on her record up until 2017.  In fact, Brooks was Employee of the Month for Franklin in February of 2017.  However, at some point in 2017, Brooks contends Franklin decided to terminate her employment due to her age and began creating false write ups in order to accomplish this goal.

Brooks argues there are numerous issues of fact precluding summary judgment for Franklin.   First, Brooks contends she was replaced by a substantially younger employee. Brooks concedes she was initially replaced by a Darlene Davis[1], a woman in her mid-fifties. Davis only lasted a couple of weeks until she was replaced by a Shanquia Davis (no relation), a woman in her forties who presently holds Brooks' former position.  According to Brooks, Franklin was cognizant of the need to conceal their discriminatory termination of Brooks and used the hiring of Darlene Davis as a sham hire to prevent Brooks from being able to establish her prima facie age discrimination case.  However, it was always Franklin's intent to fill Brooks' position with a substantially younger employee.  This, according to Brooks, creates a genuine issue of fact as to whether Brooks was in fact replaced by a substantially younger employee.

While Brooks concedes that the person who ultimately decided to terminate her, Findley, made only one age related comment to her, asking her when she was going to retire, when coupled with the discriminatory policies put into place by Findley, Brooks asserts she has raised sufficient genuine issues of fact to survive summary judgment.

---

[1] Parties also spell Davis's first name as "Darleen."

Lastly, Brooks argues that the wage freeze and sell back policies affected only older workers and presents a disparate impact discrimination claim.

**Standard of Review**

Summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed. R. Civ. P. 56(c)(1)(A), (B). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass 'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v.*

5

*Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**ADEA**

The ADEA prohibits an employer from discharging an individual because of that individual's age. 29 U.S.C. § 623(a)(1). "The plaintiff bringing an action under the ADEA has the burden of proof to establish that the plaintiff's age was the but-for reason of his or her termination." *Blizzard v. Marion Tech. College*, 698 F.3d 275, 283 (6th Cir. 2012), quoting *Gross v. FBL Fin. Servs. Inc.*, 577 U.S. 167, 177 (2009). Plaintiff may prove a violation by either direct or circumstantial evidence. *Blizzard* at 283. Direct evidence of employment discrimination is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Alberty v. Columbus Twp.*, 730 F.App'x. 352, 356 (6th Cir. 2018). Circumstantial evidence is "proof that does not on its face establish discriminatory animus, but does allow a fact finder to draw a reasonable inference that discrimination occurred." *Id*. at 358, quoting *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009).

Where plaintiff is unable to produce direct evidence of age discrimination, the Court must follow the burden-shifting framework articulated by the Supreme Court of the United

6

States in *McDonnell Douglas Corp. v. Green*. Under *McDonnell Douglas*, once the plaintiff succeeds in making a prima facie case of age discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the termination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the defendant meets its burden, then the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason is a pretext. *Blizzard*, 698 F.3d at 283, quoting *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 615 (6th Cir. 2003). Age discrimination claims brought under the Ohio statute are "analyzed under the same standards as federal claims brought under the [ADEA]." *Blizzard*, 698 F.3d at 283.

     Here, Brooks cannot show discrimination by direct evidence nor does she even argue she can demonstrate discrimination via direct evidence. Brooks' alleges she was repeatedly asked when she was going to retire by supervisors, however, the Sixth Circuit has held "questions concerning an employee's retirement plans do not alone constitute direct evidence of age discrimination." *Lefevers v. GAF Fiberglass Corp.,* 667 F.3d 721, 724 (6th Cir. 2012). Brooks alleges the wage freeze and sell back policies discriminated against older employees. The Sixth Circuit has held "a facially discriminatory employment policy or a corporate decision maker's express statement of a desire to remove employees in the protected group is direct evidence of discriminatory intent." *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir. 2000). However, these policies were based on an employees' years of service and not age. Thus, they are not direct evidence of age discrimination. See *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 611, 113 S. Ct. 1701, 1707, 123 L. Ed. 2d 338 (1993). Therefore, the Court will proceed with its analysis by considering the circumstantial evidence under the *McDonnell/Burdine* burden-shifting paradigm.

**Prima facie**

A plaintiff establishes a prima facie case by showing that (1) plaintiff is a member of a protected class; (2) plaintiff was qualified for the position; (3) the employer took an adverse employment action against plaintiff; and (4) there are "circumstances that support an inference of discrimination." *Blizzard,* 698 F.3d at 283 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)). Such circumstances can include when the employer replaced the plaintiff with a younger employee and when the employer "treated similarly situated, non-protected employees more favorably." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 521-22 (6th Cir. 2008) (citing *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 317 (6th Cir. 2007).

The burden at the prima facie stage is not an onerous one, and it is easily met. *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 813 (6th Cir. 2011). The prima facie phase "merely serves to raise a rebuttable presumption of discrimination by eliminating the most common nondiscriminatory reasons" for an employee's termination. *Cline v. Catholic Diocese of Toledo,* 206 F. 3d 651, 660 (6th Cir. 2000).

Here, the parties agree Brooks was a member of a protected class as she was over forty years of age at the time of her termination and the ADEA protected class involves those "persons 40 years of age or over..." *Allen v. Highlands Hospital Corp.,* 545 F.3d 387, 394 (6th Cir. 2008). They further agree she suffered an adverse employment action as she was terminated and that she was qualified for the position of laundry aide as she held the position for thirty years. Thus, the only disputed element is the fourth, whether the circumstances Brooks was subjected to allows an inference of age discrimination.

**Replaced by a Substantially Younger Employee**

Brooks' Complaint alleges she was replaced by a substantially younger employee. The Sixth Circuit has established a bright-line cut-off of six years difference in age as substantially younger for purposes of the fourth element of an ADEA prima facie claim. See *Grosjean v. First Energy Corp.*, 349 F.3d 332, 340 (6th Cir. 2003) ("we hold that, in the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less between an employee and a replacement is not significant.")

There is no dispute Brooks was initially replaced by Darlene Davis, who was fifty-six years of age at the time she was hired to replace Brooks, who was fifty-nine years of age when she was terminated. (ECF# 23-12 Answer to Question # 23).[2] Thus, Brooks was replaced by someone less than six years younger. Under the Sixth Circuit holding in *Grosjean,* Davis was not substantially younger than Brooks and Brooks has not met her prima facie burden.

However, Brooks essentially argues that the Davis hiring was a sham and was made in order to protect Defendants from liability for age discrimination, when in fact, Davis was only employed for a few weeks before she was replaced by Shanquia Davis, who was in her forties when hired and was therefore, substantially younger than Brooks. But the only evidence before the Court shows Darlene Davis was hired June 26, 2018, approximately two weeks after Brooks was terminated and resigned August 2, 2018 to pursue another job opportunity. She was not terminated by Defendants. (ECF 27). Therefore, Brooks has failed to meet her prima facie

---

[2] There is some inconsistencies in the parties' briefs and supporting materials where Davis' age is listed as 54 and Brooks' age is listed as 60 at the time of termination but these discrepencies are immaterial because even if the Court grants the broadest age difference of 60 and 54 there is still only six years age difference which the Sixth Circuit has expressly held is not substantially younger.

burden showing she was replaced by a substantially younger employee.

**<u>Disparate Impact</u>**

Brooks may also establish a prima facie claim for ADEA and Ohio law age discrimination by showing she was treated less favorably than non-protected class, similarly situated employees. But Brooks has not offered any evidence of a similarly situated, non-protected class employee who was treated more favorably than she. In fact, the undisputed evidence before the Court shows there were three laundry aides, including Brooks, employed by Franklin in the ten years prior to Brooks' termination. All the laundry aides at Franklin were in their fifties and Brooks was the youngest of the three. (ECF 23-12).

Moreover, Brooks points to no individual outside the protected class or substantially younger than her who was treated more favorably. She only states in general terms younger employees were not affected negatively by the wage freeze and "use it or lose it" policies but never identifies any individual comparator. Nor has she shown those younger employees reported to the same supervisor. In fact, she does not point the Court to any evidence of who was affected by the policies outside the laundry department. In her deposition, Findley testified that the purpose of the policies was to bring the laundry department under budget. (ECF 23-2, pg 52.) Brooks does not point the Court to any evidence as to what, if any, other departments were affected by the policies or whether they reported to Findley. Rather, Brooks expressly states that each department had its own budget and laundry was always over budget. (ECF # 24-3, pgs. 72-72), and the wage freeze only applied to the laundry department and one person in dietary. (ECF # 24-3, pg. 74). Because all the employees in the laundry department were older than Brooks, Brooks has failed to argue or show by any evidence a similarly situated, non-

10

protected class employee was treated more favorably than she.

Instead, Brooks contends, in the alternative, that Defendants put in place two policies that disparately impacted older employees, however, Brooks does not allege a disparate impact discrimination claim in her Complaint. In fact, she cannot because a disparate impact claim concerns "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another ... " *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 239, 125 S. Ct. 1536, 1544, 161 L. Ed. 2d 410 (2005). Rather, her ADEA and Ohio law age discrimination claims specifically and solely allege that her replacement by a younger employee was the basis for her age discrimination claims. "A prima facie case under the theory of disparate impact discrimination requires a specific, identifiable employment practice or policy that caused a significant disparate impact on employees over 40 years of age." *Adams v. Lucent Techs., Inc.*, 284 F. App'x 296, 303 (6th Cir. 2008), citing *Smith v. City of Jackson*, 544 U.S. 228, 241, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005). The plaintiffs must "through relevant statistical analysis prove that the challenged practice has an adverse impact on a protected group." *Butts v. McCullough*, 237 F. Appx. 1, 8 (6th Cir.2007) (quoting *Isabel v. City of Memphis,* 404 F.3d 404, 411 (6th Cir.2005).

"However, as noted above, a prima facie case of disparate impact requires a showing of adverse impact through "relevant statistical analysis," and a "'complete failure to make any such statistical showing is fatal to [a] claim.'" *Adams*, 284 F. App'x. at 303 quoting *Butts*, 237 F. .Appx. at 9.

Here, Brooks never pled a disparate impact claim in her Complaint. Instead, the discriminatory wage freeze and "use it or lose it" policies were described as the conduct she

11

complained of that resulted in her termination, forming the basis of her now abandoned Retaliation claim. A plaintiff may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion. See *Tucker v. Union Needletrades, Industrial and Textile Employees*, 407 F.3d 786, 788 (6th Cir. 2005). Moreover, 'it is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather, the employee is "responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities. " *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 241, 125 S. Ct. 1536, 1545, 161 L. Ed. 2d 410 (2005). Plaintiff makes no mention of statistical disparities that would support a claim for disparate impact even if she had asserted such a claim in her Complaint, which she has not. Moreover, in her Opposition Brief, Brooks argues that far from being facially neutral, the policies in question were "explicitly only applied to the employees that were approaching sixty years of age. There is no need for statistical evidence when the policy has a disparate impact on its face." (ECF # 25 pg. 12). Also, as previously discussed, each department had its own budget and the wage freeze only applied to the laundry department. All employees of that department were older than Brooks. Therefore, the Court finds Brooks has not asserted a disparate impact claim as she does not allege the policies in question were facially neutral and offers no evidence, statistical or otherwise to support a disparate impact claim.

Also, the United States Supreme Court has held that policies relating to years of service are not necessarily discriminatory based on age. "Because age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily "age based."

*Hazen Paper Co. v. Biggins,* 507 U.S. 604, 611, 113 S. Ct. 1701, 1707, 123 L. Ed. 2d 338 (1993).

Therefore, the Court finds Brooks has failed to meet her prima facie burden to show age discrimination.

However, assuming arguendo that Brooks had sufficiently alleged an Age Discrimination claim based on one statement of Findley asking when Brooks was going to retire, and the two policies that purportedly affected older employees, and that this was enough to meet her prima facie burden (despite her allegations in her Complaint that her Age Discrimination claim was based on her replacement by a substantially younger employee), the Court finds Brooks cannot show pretext.

Franklin can meet its burden to show a legitimate non-discriminatory reason for Brooks termination.  Under *McDonnell Douglas*, the burden of production now shifts to Defendant to articulate a nondiscriminatory reason for its adverse employment action against Plaintiff. *Alberty v. Columbus Twp.*, 730 F.App'x. 352, 358 (6th Cir. 2018).  An employer is "entitled to judgment as a matter of law if the record conclusively reveals some other, nondiscriminatory reason, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148, 120 S. Ct. 2097, 147 L.Ed.2d 105 (2000).

It is undisputed Brooks incurred a number of write ups in a short period of time.  In fact, Brooks admits she handled soiled laundry without wearing gloves in violation of Franklin's policies.  Franklin points to the testimony of Findley who describes how dangerous the handling

13

of soiled linen without gloves is in the nursing home environment:

> Q. Is it the policy that the laundry staff are supposed to put the gloves on while they're in the hallway to removed the soiled linens?
>
> A. Yes. Correct. The linens at the nursing home, it's not typical linens with the dirty clothes like we have at home. It's physically towels and wash rags that STNAs are using to wash number one, number two. So it's -- I could not imagine nobody washing it with bare hands.

(Findley depo. ECF # 23-2 pg 9-10).

Brooks claims employees were prohibited from wearing gloves in the hallway under Franklin's policies but as Findley explained:

> Q. Is it Franklin Plaza's policy that the laundry staff are not supposed to wear gloves while they're walking through the hallways?
>
> A. There is no gloves during walking for every single employee in the nursing home. Not even that. We cannot have vendors walking with gloves in the hallway. This is not only our policy, but this is an infection control policy from the state.

(Id.)

The policies at issue were intended to protect the residents of Franklin from the spread of infectious agents. Findley testified that the State of Ohio surveyors specifically observed Brooks handling the soiled linen without gloves and nearly cited Franklin for the violation. Findley testified that this act was what ultimately resulted in Brooks' termination. Brooks admitted to the violation. Generally, poor work performance is a legitimate and nondiscriminatory reason for discharge. *Heck v. Bd. of Trustees,* 12 F.Supp.2d 728, 740 (S.D. Ohio 1998), accord *Danielson v. Lorain*, 938 F.2d 681, 684 (6th Cir. 1991) (stating that workers who poorly perform

14

their jobs are not insulated from dismissal simply because they are members of the protected age group). Thus, Franklin has met its burden to show a legitimate, non-discriminatory reason for the termination.

Furthermore, though the purportedly discriminatory policies of Franklin may or may not have resulted in loss of wages for Brooks, Brooks has abandoned her claim that her complaining of them resulted in her termination. Regardless, Findley testified they were put in place as a cost saving measure in the laundry department due to the department being over budget, and the policies resulted in bringing the laundry department within budget. (Id at pgs. 13-14). Again, all the laundry aides were older than Brooks and none were terminated as a result of write-ups or the wage or vacation policies. Only Brooks.

Once the plaintiff has established a prima facie case of age discrimination and the defendant has countered with a legitimate, nondiscriminatory reason for terminating plaintiff, the burden shifts back to plaintiff to establish that defendant's stated reason for discharge is pretextual. *Blizzard,* 698 F.3d at 285.

At the pretext stage, the plaintiff must produce sufficient evidence from which a jury could reasonably reject the defendant's stated reasons for termination. *Blizzard*, 698 F.3d at 285. To establish pretext, a plaintiff must show that: "(1) the proffered reasons had no basis in fact, (2) the proffered reasons did not actually motivate discharge, or (3) they were insufficient to motivate discharge." *Id.,* quoting *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012) (Emphasis removed).

Brooks has produced no evidence of pretext. She admitted she handled soiled linens without gloves, therefore, she cannot show the proffered reason for her termination had no basis

15

in fact. She has produced no evidence that her violation of the glove policy did not motivate or was insufficient to warrant discharge.

Therefore, for the foregoing reasons, the Court finds Brooks has failed to satisfy her burden to show unlawful age discrimination. Thus, the Court grants summary judgment for Franklin on Brooks' Age Discrimination claims.

IT IS SO ORDERED.


Date: 11/18/2020          /s/Christopher A. Boyko
                         CHRISTOPHER A. BOYKO
                         Senior United States District Judge

16